## CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Commonwealth of Virginia

v.

Robert Eubanks

Case No. 92–16

Commonwealth of Virginia

v.

Daniel Sisk

Case No. 92–17

Commonwealth of Virginia

v.

Carl E. Shifflett

Case No. 92–28

February 24, 1992

BY JUDGE JAY T. SWETT

Worrell Newspapers, Inc., publisher of *The Daily Progress,* has filed a motion requesting that this court unseal the three criminal court files referenced above. The request is opposed by the juveniles. The Commonwealth has taken no position.

These juvenile cases involve the charge of murder. The charges originated in the Juvenile and Domestic Relations District Court be-

cause the defendants were 17 at the time of the offense. Pursuant to Va. Code § 16.1–269, the Commonwealth moved to transfer the cases to the Charlottesville Circuit Court. The juvenile court judge approved all the transfer requests. One of the defendants, Mr. Sisk, noted an appeal of the transfer order. In an earlier hearing, this Court denied the transfer appeal. All three have been indicted by a Charlottesville Circuit Court grand jury.

Worrell Newspaper, primarily relying on Va. Code Section 17-43 and *Shenandoah Publishing House, Inc. v. Fanning*, 235 Va. 253, 368 S.E.2d 253 (1988), argues that the record in a juvenile case transferred to a circuit court must be open to inspection by the public in the same fashion as all circuit court records. Under § 17–43, the records of the circuit court are open for inspection by the public "except in cases in which it is otherwise specially provided." Worrell Newspapers argues that this is not such a case and § 17–43, as applied in *Shenandoah Publishing*, mandates that the three files be treated as any other circuit court criminal file.

In opposing the motion to unseal the files, the defendants rely on Va. Code §§ 16.1–302, 16.1–305, and 16.1–307. Section 16.1–307 provides as follows:

> In proceedings against a child in the circuit court in which the circuit court deals with the child in the same manner as a case in the juvenile court, the clerk of the court shall preserve all records connected with the proceedings in files separate from other files and records of the court as provided in § 16.1–302. Such records shall be open for inspection only in accordance with the provisions of § 16.1–305 . . . .

Section 16.1–305 mandates confidentiality for all juvenile records and limits the circumstances under which they are available for inspection. Defendants argue that Section 16.1–307 applies since the circuit court has the authority to sentence the defendants as juvenile offenders rather than as adults if the defendants are subsequently found guilty of an offense. In effect, defendants argue that juvenile cases transferred to the circuit court under Section 16.1–269 for trial as adults are not subject to Section 17–43 unless and until the defendant is found guilty and the circuit court judge decides that the convicted juvenile will be sentenced as an adult rather than as a juvenile.

This is a case of first impression. This Court has not been able to find any Virginia case construing Section 16.1–307. The Court must apply the plain language of Section 16.1–307 in light of § 17–43 and § 16.1–269. If cases transferred to circuit court under § 16.1–269 are proceedings against juveniles where a circuit court "deals with the child in the same manner as a case in the juvenile court," then § 16.1–307 mandates that the records be maintained on a confidential basis. Worrell Newspapers argues that this section applies only to juvenile criminal cases pending in the circuit court on appeal and does not apply to a case transferred under § 16.1–269.

This Court has learned of an Attorney General's opinion rendered on November 9, 1989, which supports the position of Worrell Newspapers. In that opinion directed to The Honorable J. Curtis Fruit, Clerk of the Virginia Beach Circuit Court, The Honorable Mary Sue Terry stated that it was her opinion that once a case is transferred to the circuit court from a juvenile court where the juvenile is to be tried as an adult, then the criminal files are open to public inspection to the same extent as any other adult criminal case. While that Attorney General opinion is not binding, this court finds the opinion persuasive.

In a transfer case under § 16.1–269, the juvenile is tried as if he or she was an adult. The juvenile is entitled to trial by jury. Jury trials are not available in juvenile court. The juvenile is entitled to participate in and be subject to discovery available in criminal cases pending in circuit court under Rule 3A:11. Such discovery is not available in juvenile court. Thus, on these grounds alone, it is seen that the defendants will not be dealt with in the same manner here as a case in juvenile court. Accordingly, this Court agrees with the Attorney General's opinion and concludes that § 16.1–307 does not apply to records involving juveniles transferred to the circuit court for trial as adults under § 16.1–269.

This does not mean that every document in a juvenile record in the circuit court is automatically available for public inspection. In these three cases, there are reports by the Juvenile and Domestic Relations Court service unit required by § 16.1–269 and prepared prior to the transfer hearing. In a transfer hearing, a juvenile judge is required to make a finding that the juvenile is not mentally retarded or criminally insane. To assist the juvenile judge in making this finding, there is a psychiatric examination performed related to the issues of

mental retardation and criminal insanity. The report of that examination becomes a part of the juvenile case file. In addition, the juvenile court service unit prepares an extensive transfer hearing narrative report that includes information about the juvenile's background, education, family, and, if applicable, criminal history. This type of information is unique to juvenile criminal cases and assists the juvenile judge in deciding whether the juvenile is amenable to treatment or rehabilitation as required by § 16.1–269(A)(3). If the three defendants involved here had been age 18 or older at the time this alleged offense was committed, these cases would have originated either in general district court by an arrest warrant or by direct indictment from the circuit court. In either case, there would have been no occasion for such sensitive information of this type to become part of a defendant's criminal record and available to the public under § 17–43. The psychiatric examination and the narrative history report are part of these records only because the cases originated in juvenile court and such reports are required under § 16.1–269.

It is this Court's conclusion that while the criminal records involved here are to be treated pursuant to Section 17-43, it is also my conclusion that it is in the best interests of these juveniles that the sensitive information contained in the psychiatric examination reports, and in the transfer hearing narratives remain sealed and not be made available to the general public. This Court finds justification for this in *Shenandoah Publishing House, Inc. v. Fanning*, 235 Va. 253 (1988). In *Shenandoah Publishing*, the trial court, on a request by the parties, entered an order in a civil action sealing the file which had been concluded by a compromise settlement. The Virginia Supreme Court held that sealing the file was improper, relying on Va. Code § 17–43 and the principles announced in *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980), and *Press-Enterprise Co. v. Superior Court of Cal.*, 464 U.S. 501 (1984). Our Supreme Court found no justification for the trial court to seal a court file merely on the request of the parties.

Of note, however, is the specific holding in *Shenandoah Publishing*:

> In light of the legislative history, § 17–43 and its common law underpinnings, we are of the opinion that, subject to statutory exceptions, a rebuttable presumption of public access applies in civil proceedings to judicial records as

we have defined that term. We further believe that, to overcome that presumption, the moving party must bear the burden of establishing an interest so compelling that it cannot be protected reasonably by some measure other than a protective order, *see, Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 563–65 (1976) (suggesting as possible alternatives, change of venue, postponement of trial, sequestration of jurors), and that any such order must be drafted in the manner least restrictive of the public's interest. 235 Va. at 258–259.

Thus, *Shenandoah Publishing* holds there is a rebuttable presumption that court records should be open to the public. While that case dealt with a civil record, this Court does not see any reason why it would not apply equally to criminal records. However, I also find that there are limited portions of these records, such as those I have just discussed, that should remain sealed. They are limited to any report of a psychiatric examination and any transfer hearing narrative, including any prior history, if any, in the juvenile court. There is no practical alternative to sealing these documents that would adequately protect the interests of these juveniles.

Accordingly, this Court will enter an order unsealing these records except for the specific reports and related documents just described, which shall remain sealed by the clerk until further order of this Court.